(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BUCKEYE CHECK CASHING, INC. *v.* CARDEGNA ET AL.

### CERTIORARI TO THE SUPREME COURT OF FLORIDA

No. 04–1264. Argued November 29, 2005—Decided February 21, 2006

For each deferred-payment transaction respondents entered into with Buckeye Check Cashing, they signed an Agreement containing provisions that required binding arbitration to resolve disputes arising out of the Agreement. Respondents sued in Florida state court, alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida laws, rendering it criminal on its face. The trial court denied Buckeye's motion to compel arbitration, holding that a court rather than an arbitrator should resolve a claim that a contract is illegal and void *ab initio.* A state appellate court reversed, but was in turn reversed by the Florida Supreme Court, which reasoned that enforcing an arbitration agreement in a contract challenged as unlawful would violate state public policy and contract law.

*Held:* Regardless of whether it is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court. *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.,* 388 U. S. 395, and *Southland Corp.* v. *Keating,* 465 U. S. 1, answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. See *Prima Paint,* 388 U. S., at 400, 402–404. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. See *id.*, at 403–404. Third, this arbitration law applies in state as well as federal courts. See *Southland, supra,* at 12. The crux of respondents' claim is that the Agreement as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge. Because this challenges the

Agreement, and not specifically its arbitration provisions, the latter are enforceable apart from the remainder of the contract, and the challenge should be considered by an arbitrator, not a court. The Florida Supreme Court erred in declining to apply *Prima Paint's* severability rule, and respondents' assertion that that rule does not apply in state court runs contrary to *Prima Paint* and *Southland.* Pp. 3–8.

894 So. 2d 860, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion. ALITO, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1264

## BUCKEYE CHECK CASHING, INC., PETITIONER *v.* JOHN CARDEGNA ET AL.

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF FLORIDA

[February 21, 2006]

JUSTICE SCALIA delivered the opinion of the Court.

We decide whether a court or an arbitrator should con-
sider the claim that a contract containing an arbitration
provision is void for illegality.

## I

Respondents John Cardegna and Donna Reuter entered
into various deferred-payment transactions with peti-
tioner Buckeye Check Cashing (Buckeye), in which they
received cash in exchange for a personal check in the
amount of the cash plus a finance charge. For each sepa-
rate transaction they signed a "Deferred Deposit and
Disclosure Agreement" (Agreement), which included the
following arbitration provisions:

> "1. *Arbitration Disclosure* By signing this Agreement,
> you agree that i[f] a dispute of any kind arises out of
> this Agreement or your application therefore or any
> instrument relating thereto, th[e]n either you or we or
> third-parties involved can choose to have that dispute
> resolved by binding arbitration as set forth in Para-
> graph 2 below . . . .

> 2. *Arbitration Provisions*  Any claim, dispute, or con-
> troversy . . . arising from or relating to this Agreement
> . . . or the validity, enforceability, or scope of this Arbi-
> tration Provision or the entire Agreement (collectively
> 'Claim'), shall be resolved, upon the election of you or
> us or said third-parties, by binding arbitration . . . .
> This arbitration Agreement is made pursuant to a
> transaction involving interstate commerce, and shall
> be governed by the Federal Arbitration Act ('FAA'), 9
> U. S. C. Sections 1–16.  The arbitrator shall apply ap-
> plicable substantive law constraint *[sic]* with the FAA
> and applicable statu[t]es of limitations and shall
> honor claims of privilege recognized by law . . . ."

Respondents brought this putative class action in Flor-
ida state court, alleging that Buckeye charged usurious
interest rates and that the Agreement violated various
Florida lending and consumer-protection laws, rendering
it criminal on its face.  Buckeye moved to compel arbitra-
tion.  The trial court denied the motion, holding that a
court rather than an arbitrator should resolve a claim that
a contract is illegal and void *ab initio*.  The District Court
of Appeal of Florida for the Fourth District reversed,
holding that because respondents did not challenge the
arbitration provision itself, but instead claimed that the
entire contract was void, the agreement to arbitrate was
enforceable, and the question of the contract's legality
should go to the arbitrator.

Respondents appealed, and the Florida Supreme Court
reversed, reasoning that to enforce an agreement to arbi-
trate in a contract challenged as unlawful "'could breathe
life into a contract that not only violates state law, but
also is criminal in nature . . . .'"  894 So. 2d 860, 862
(2005) (quoting *Party Yards, Inc.* v. *Templeton*, 751 So. 2d
121, 123 (Fla. App. 2000)).  We granted certiorari.  545
U. S. ___ (2005).

## II

## A

To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U. S. C. §§1–16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:

> "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. See, *e.g., Southland Corp.* v. *Keating*, 465 U. S. 1, 4–5 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.[1] Respondents'

_____

[1] The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, *Chastain* v. *Robinson-Humphrey Co.*, 957 F. 2d 851 (CA11 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB* v.

claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.

In *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.,* 388 U. S. 395 (1967), we addressed the question of who—court or arbitrator—decides these two types of challenges. The issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.*, at 402. Guided by §4 of the FAA,[2] we held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.*, at 403–404 (internal quotation marks and footnote omitted). We rejected the view that the question of "severability" was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court. See *id.*, at 400, 402–403.

Subsequently, in *Southland Corp.*, we held that the FAA

_____

*Advent Int'l Corp.*, 220 F. 3d 99 (CA3 2000); *Sphere Drake Ins. Ltd.* v. *All American Ins. Co.*, 256 F. 3d 587 (CA7 2001), and whether the signor lacked the mental capacity to assent, *Spahr* v. *Secco*, 330 F. 3d 1266 (CA10 2003).

[2] In pertinent part, §4 reads:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [with jurisdiction] . . . for an order directing that such arbitration proceed in a manner provided for in such agreement . . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . ."

"create[d] a body of federal substantive law," which was "applicable in state and federal court." 465 U. S., at 12 (internal quotation marks omitted). We rejected the view that state law could bar enforcement of §2, even in the context of state-law claims brought in state court. See *id.*, at 10–14; see also *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265, 270–273 (1995).

B

*Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

In declining to apply *Prima Paint's* rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts. "Florida public policy and contract law," it concluded, permit "no severable, or salvageable, parts of a contract found illegal and void under Florida law." 894 So. 2d, at 864. *Prima Paint* makes this conclusion irrelevant. That case rejected application of state severability rules to the arbitration agreement *without discussing* whether the challenge at issue would have rendered the contract void or voidable. See 388 U. S., at 400–404. Indeed, the opinion expressly disclaimed any need to decide what state-law remedy was

available, *id.,* at 400, n. 3, (though Justice Black's dissent *asserted* that state law rendered the contract void, *id.,* at 407). Likewise in *Southland*, which arose in state court, we did not ask whether the several challenges made there—fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of the California Franchise Investment Law—would render the contract void or voidable. We simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action. See 465 U. S., at 10. So also here, we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on "Florida public policy and contract law," 894 So. 2d, at 864.

C

Respondents assert that *Prima Paint*'s rule of severability does not apply in state court. They argue that *Prima Paint* interpreted only §§3 and 4—two of the FAA's procedural provisions, which appear to apply by their terms only in federal court—but not §2, the only provision that we have applied in state court. This does not accurately describe *Prima Paint*. Although §4, in particular, had much to do with *Prima Paint*'s understanding of the rule of severability, see 388 U. S., at 403–404, this rule ultimately arises out of §2, the FAA's substantive command that arbitration agreements be treated like all other contracts. The rule of severability establishes how this equal-footing guarantee for "a written [arbitration] provision" is to be implemented. Respondents' reading of *Prima Paint* as establishing nothing more than a federal-court rule of procedure also runs contrary to *Southland*'s understanding of that case. One of the bases for *Southland*'s application of §2 in state court was precisely *Prima Paint*'s "reli[ance] for [its] holding on Congress' broad power to

fashion substantive rules under the Commerce Clause."
465 U. S., at 11; see also *Prima Paint*, *supra*, at 407
(Black, J., dissenting) ("[t]he Court here holds that the
[FAA], as a matter of *federal substantive law . . .*" (emphasis added)). *Southland* itself refused to "believe Congress
intended to limit the Arbitration Act to disputes subject
only to *federal*-court jurisdiction." 465 U. S., at 15.

Respondents point to the language of §2, which renders
"valid, irrevocable, and enforceable" "a written provision
in" or "an agreement in writing to submit to arbitration an
existing controversy arising out of" a "contract." Since,
respondents argue, the only arbitration agreements to
which §2 applies are those involving a "contract," and
since an agreement void *ab initio* under state law is not a
"contract," there is no "written provision" in or "controversy arising out of" a "contract," to which §2 can apply.
This argument echoes Justice Black's dissent in *Prima
Paint:* "Sections 2 and 3 of the Act assume the existence of
a valid contract. They merely provide for enforcement
where such a valid contract exists." 388 U. S., at 412–413.
We do not read "contract" so narrowly. The word appears
four times in §2. Its last appearance is in the final clause,
which allows a challenge to an arbitration provision "upon
such grounds as exist at law or in equity for the revocation
of any *contract.*" (Emphasis added.) There can be no
doubt that "contract" as used this last time must include
contracts that later prove to be void. Otherwise, the
grounds for revocation would be limited to those that
rendered a contract voidable—which would mean (implausibly) that an arbitration agreement could be challenged
as voidable but not as void. Because the sentence's final
use of "contract" so obviously includes putative contracts,
we will not read the same word earlier in the same sentence to have a more narrow meaning.[3] We note that

---

[3] Our more natural reading is confirmed by the use of the word "con-

neither *Prima Paint* nor *Southland* lends support to re-spondents' reading; as we have discussed, neither case turned on whether the challenge at issue would render the contract voidable or void.

\*        \*        \*

It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions. We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the valid-ity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.

The judgment of the Florida Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of this case.

---

tract" elsewhere in the United States Code to refer to putative agree-ments, regardless of whether they are legal. For instance, the Sherman Act, 26 Stat. 209, as amended, states that "[e]very contract, combina-tion . . . , or conspiracy in restraint of trade . . . is hereby declared to be illegal." 15 U. S. C. §1. Under respondents' reading of "contract," a bewildering circularity would result: A contract illegal because it was in restraint of trade would not be a "contract" at all, and thus the statu-tory prohibition would not apply.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–1264

_____

## BUCKEYE CHECK CASHING, INC., PETITIONER *v.* JOHN CARDEGNA ET AL.

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF FLORIDA

[February 21, 2006]

JUSTICE THOMAS, dissenting.

I remain of the view that the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, does not apply to proceedings in state courts. See *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265, 285–297 (1995) (THOMAS, J., dissenting); *Doctor's Associates, Inc.* v. *Casarotto,* 517 U. S. 681, 689 (1996) (same); *Green Tree Financial Corp.* v. *Bazzle,* 539 U. S. 444, 460 (2003) (same). Thus, in state-court proceedings, the FAA cannot be the basis for displacing a state law that prohibits enforcement of an arbitration clause contained in a contract that is unenforceable under state law. Accordingly, I would leave undisturbed the judgment of the Florida Supreme Court.